1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID SUTLIFF,

         Plaintiff

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 5:15-CV-00085 (KS)

**MEMORANDUM OPINION AND
ORDER**

**INTRODUCTION**

On January 15, 2015, Plaintiff, David Sutliff ("Plaintiff"), filed a Complaint seeking judicial review of a denial of his application for a period of disability and disability insurance benefits ("benefits".)  (Complaint, ECF No. 1.)  On September 4, 2015 and January 20, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Consents, ECF Nos. 15, 19.)  On October 1, 2015, the parties filed a Joint Stipulation, whereby Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and Defendant seeks an order affirming the Commissioner's decision

or, in the alternative, remanding the matter for further administrative proceedings. (Joint Stip., ECF No. 17).   The Court has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 15, 2011, Plaintiff protectively filed an application for benefits, alleging disability beginning March 31, 2011.  (Administrative Record ("A.R.") 18.) Plaintiff's claim was denied initially on December 20, 2011 and upon reconsideration on November 29, 2012.  (A.R. 18.)   On December 12, 2012, Plaintiff requested a hearing, which was held on June 28, 2013.   (*Id.*) Administrative Law Judge Marti Kirby ("ALJ") presided over the hearing which included testimony by an impartial vocational expert ("VE") and Plaintiff who was represented by a non-attorney.  (*Id.*)  Plaintiff, born on June 5, 1967, was aged 46 at the time of his hearing.  In a written decision dated July 12, 2013, the ALJ denied benefits.   (A.R. 18, 32.)   On November 26, 2014, the Appeals Council denied Plaintiff's request for review of that decision.  (A.R. 1-4.)  Plaintiff then filed this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ utilized the five-step sequential evaluation process to determine whether Plaintiff was disabled.  20 C.F.R. § 416.920.  At the first step, the ALJ agreed that Plaintiff met the insured status requirements of the Social Security Act ("SSA").  (A.R. 20, 45.)  At the second step, the ALJ also agreed that Plaintiff had not engaged in any substantial gainful activity, including his past work as a surgical technician, since March 31, 2011, the alleged disability onset date.  (A.R. 20, 46.) At the third step, the ALJ found that Plaintiff suffered from severe, and medically

determinable, impairments consisting of anxiety, panic disorder with agoraphobia, and post-traumatic stress disorder ("PTSD").  (A.R. 20.)

At the fourth step, the ALJ applied the guidelines for evaluation (contained in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526), and found that the severity of Plaintiff's impairments did not meet or "equal" the criteria contained in the appropriate listings 12.02 and 12.06 contained in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (A.R. 21.)

At the fifth step, the ALJ assessed that Plaintiff had a residual functional capacity ("RFC") for work which jobs exist in significant numbers in the national economy.  (A.R. 31.)  In her RFC assessment, the ALJ considered evidence of Plaintiff's daily activities, Plaintiff's own testimony, his Adult Function Report dated January 2, 2012, and his medical history/records.  (A.R. 23.)  Based on Plaintiff's daily activities, behavior (including at the hearing) and statements,[1] the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [though reasonably caused by his medically determinable impairments] are not entirely credible."  (A.R. 24-25.)

With respect to evaluating the medical history/records, the ALJ weighted the opinions of all the record medical and other treating source opinions as follows: the ALJ (1) gave "little weight to the opinion of [Plaintiff's] therapist" Deborah Boyd, (2) discussed but did not describe what weight, if any, was given to the opinion of examining psychologist Kathy Vandenburgh, Ph.D., (3) gave "little weight" to the opinion of Plaintiff's primary care physician, Dr. Robert Vazquez, M.D.,[2] (4)

---

[1] Specifically, the ALJ noted Plaintiff's "conservative" treatment, "fear of taking psychotropic medications and treatment with a psychologist," Plaintiff's reluctance to "change his diet or exercise because he does not want to feel different, in finding that Plaintiff's "persistent non-participation in other medical mental or alternative treatment weighs strongly against his credibility in alleging disability."  (A.R. 24.)

[2] Dr. Vazquez is also referred to as "Roben Vazquez" in the record.  (See, e.g., A.R. 26.)

3

declined to give "controlling or significant weight" to the opinion of examining psychiatrist Dr. John J. Kohut, M.D., (5) gave "little weight" to the opinion of examining [physician] Dr. Anthony G. Bassanelli, M.D., and (6) gave "little weight" to the opinion of examining psychiatrist Dr. Romualdo Rodriguez, M.D.  (A.R. 26-28.)  The ALJ stated that "no single assessment has been completely adopted as the [RFC] determined herein," but that in order "to give [Plaintiff] the benefit of the doubt" she "has adopted those specific mental restrictions on a function-by-function basis that are best supported by the objective evidence as a whole."  (A.R. 29.)  Consequently, the ALJ assessed that Plaintiff could perform a full range of work with the following nonexertional limitations:

> occasional interaction with the public, co-workers, supervisors; no climbing ladders, ropes, and scaffolds' no work at unprotected heights, around moving machinery, or other hazards; no jobs requiring hypervigilance or intense concentration on a particular task; no high stress jobs; have minimal workplace changes; is limited to simple, routine, and repetitive tasks; and is likely off task up to 10% of the work day or work week, or 48 minutes a day or 4 hours a week, due to psychological factors.

(A.R. 22. (footnote omitted).)

Presented with the above referenced limitations (except the limitation of 10% of time off), the VE testified that Plaintiff's "past work [as a surgical technician] would not be performable as performed or per the DOT."  (A.R. 65.)  However, she also testified, when presented with a hypothetical individual of Plaintiff's age, educational background and the above limitations (again excluding the 10% of time off), that "there would be some other work" which he could do; namely that the individual could perform the work of (1) "a linen room attendant," of which there

were 44,000 positions nationwide, (2) "a bagger, not a grocery bagger but one that packs new items," of which there were 16,000 positions nationally, and (3) a mail clerk, of which there were 40,000 positions in the region.  (A.R. 65.)  When asked to also consider the limitation of 10% of time off work as part of the hypothetical, the VE testified that the bagger position would be precluded, but "the other two positions would be performable with no erosion of the numbers."  (A.R. 66.)  At the same time, the VE testified that she could add to the individual's performable functions, "another light, unskilled position of cleaner. . . with approximately 126,000 positions nationally."  (A.R. 66.)

The ALJ "determined that the [VE]'s testimony is consistent with the information contained in the [DOT]."  (A.R. 31.)  Relying on that testimony, the ALJ concluded that Plaintiff was "not disabled" and "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (A.R 31-32.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  The Court will

also not reverse the Commissioner's decision "[w]here evidence is susceptible to more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)

Courts must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."

*Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140-42 (9th Cir. 2014).

## DISCUSSION

Plaintiff challenges the ALJ's decision on the basis that: (1) the RFC determination was not supported by sufficient evidence (*i.e.* because she failed to resolve conflicts with the DOT); (2) the ALJ's adverse credibility assessment of Plaintiff was not supported by substantial evidence, and (3) the ALJ applied an erroneous approach in evaluating the medical evidence in Plaintiff's file. (Joint Stip. 3.)

Because the Court finds that the ALJ failed to accord proper weight to the medical and other source opinions or to articulate legally sufficient reasons for discounting such opinions, the Court declines to reach the questions of whether the ALJ also failed to resolve conflicts with the DOT[3] or properly evaluated Plaintiff's testimony[4] and remands for further proceedings on the issue of weighting medical and treating source opinions.

---

[3] To the extent that the VE's testimony (that Plaintiff could *not* perform the job of cleaner if he was limited to occasional public interaction, simple, routine, and repetitive tasks, but *could* perform the job of cleaner if he was limited to occasional public interaction, simple, routine, and repetitive tasks, *and permitted to miss 10% of the work day*) was internally inconsistent and inconsistent with the DOT, the ALJ on remand must investigate any ambiguities in the record and, before relying on the VE's testimony, resolve any inconsistences between the VE's testimony and the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007).

[4] To the extent the ALJ found that Plaintiff's refusal to take psychotropic medication for his anxiety and other mental health symptoms undermined his credibility, the ALJ may draw such an inference only after first developing the record with regard to the effect of the prescribed medication in alleviating symptoms and to its adverse side-effects. *See Kestner v. Colvin*, 2014 U.S. Dist. LEXIS 154764 (N.D. Cal. Oct. 31, 2014) ("Failure to take medicine is not medical noncompliance per se. It is justified when a claimant cannot afford treatment or has severe reactions to medicine.")   *See also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("An 'adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment" including inability to pay, whether "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely," and whether medication may relieve symptoms."); *Gamble v. Chater*, 68 F.3d. 319, 321 (9th Cir. 1995); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

1. **The ALJ did not give germane reasons for ascribing "little" weight to Plaintiff's treatment provider, Deborah Boyd, LMFT**

Licensed marriage and family therapist, Deborah Boyd, saw and treated Plaintiff on a regular (weekly or biweekly) basis since November 2010.[5] (A.R. 548.) She assessed that Plaintiff was functionally impaired and unable to work due to "severe anxiety and underlying depression," and worked with him on cognitive behavior techniques.   (A.R. 543-45.)   Ms. Boyd completed a Mental RFC Assessment on January 9, 2013, assessing several limitations of a degree severe enough to satisfy the Listing for Anxiety Related Disorders (12.06.).[6]  (A.R. 526-31.)

The ALJ assigned "little weight" to the opinion of Ms. Boyd primarily because (1) her findings were not sufficiently bolstered by medical findings; (2) her findings were undermined by Plaintiff's daily activities that were not limited to the extent expected; and (3) she appeared unfamiliar with the SSA definitions in completing the Mental RFC Assessment.  (A.R. 25-26.)  The Ninth Circuit has held that "[o]nly physicians and certain other qualified specialists are considered '[a]cceptable medical sources'" and that while the opinions of "other [medical] sources" including those of therapists must still be evaluated, 20 C.F.R. § 404.1527(c), the ALJ may "discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'"  *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1111); *see also* 20 C.F.R. § 404.1513(a).  As discussed below, the ALJ's statements do not constitute germane reasons for discounting Ms. Boyd's assessment.

---

[5] That Plaintiff did not see a physician specializing in mental health for regular treatment is not dispositive.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (superseded on other grounds) (finding in a case where plaintiff "had no insurance and could not afford treatment," that the plaintiff had good reason for not seeking treatment or taking medication).

[6] The Court notes that there do not appear to be any other formal Mental RFC Assessments in the record.

First, the ALJ stated that Ms. Boyd "did not provide medically acceptable clinical or diagnostic findings to support any functional assessments of limitations," and her "statements are not significantly bolstered by medical signs and findings suggesting limitations as severe as she opined." (A.R. 26.)  Contrary to the ALJ's statement that there are no clinical findings to support Ms. Boyd's opinion, however, the record contains Plaintiff's results of tests administered by examining physician Dr. John Kohut (including the Minnesota Multiphasic Personality Inventory, Beck Inventory, Social Phobia Inventory, Bourne Anxiety Inventory, The Mood Disorder Questionnaire, and Yale-Brown Obsessive Compulsive Severity Ratings)[7] which support a diagnosis of severe anxiety.  (A.R. 460-69.)

Second, Plaintiff need not be utterly unable to function in order to support Ms. Boyd's assessment.  The standard here is not the utter inability to function, but rather Plaintiff's ability to do work.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room" or "be a total basket case" to be found unable to engage in substantial gainful activity).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (grocery shopping, driving a car, or limited walking for exercise does not, in any way, detract from disability).  Moreover, Plaintiff was admittedly on a consistent treatment regimen of cognitive behavior therapy for several years that was at least somewhat effective in controlling his symptoms.  (A.R. 27.)

Third, the ALJ appears to discount Ms. Boyd's assessment (not limited to her Mental RFC assessment) because her "conclusion that [Plaintiff] is unable to work has no probative value," and "it is clear she is not familiar with the definition of 'disability' contained in the Social Security Act and regulations or the evidentiary

---

[7] Although an ALJ may discount an opinion based on tests within the claimant's control and subject to manipulation, here, the ALJ makes no mention of the tests administered by Ms. Boyd, much less discounts them. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).

requirements of an acceptable medical source."  (A.R. 26.)  While the ALJ must make the ultimate disability determination and is free to find Plaintiff more or less functionally limited than Ms. Boyd, she must still provide germane reasons to discount Ms. Boyd's opinion and underlying findings.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") Discarding Ms. Boyd's opinion because she is not familiar with the evidentiary requirements of an acceptable medical source under agency regulations is not a germane reason for giving her opinion, as treatment provider, little to no weight. This is particularly so, given that Ms. Boyd's opinion was corroborated—almost unanimously—by  various  other physicians both treating and examining whose assessments are also part of the record and discussed below.

## 2. __The ALJ's reasons for not affording "controlling" or "special" weight to Plaintiff's treating physician, Dr. Robert Vazquez, M.D., are not specific and legitimate reasons supported by substantial evidence__

Plaintiff regularly presented to his primary care physician, Dr. Robert Vazquez, M.D. for hypertension and anxiety.  The ALJ discounted the opinion of Dr. Vazquez, who "indicated that [Plaintiff] has anxiety and depression and has severe panic attacks and severe depression that would prevent [Plaintiff] from working for certain periods of time," because (1) Dr. Vazquez did not treat or prescribe medication to Plaintiff, (2) "the nature of [Plaintiff's] impairments are outside Dr. Vazquez's specialty," (3) though Dr. Vazquez's notes indicate that Plaintiff has anxiety, depression and severe panic attacks, his notes never reflect "significant distress or anxiety at any of [Plaintiff's] visits with Dr. Vazquez," and Plaintiff has never been hospitalized, (4) Plaintiff denied having depression, and (5)

"the opinion of Dr. Vazquez is based entirely on subjective reports" by Plaintiff. (A.R. 26-27.)

As a general rule, the opinion of treating doctor is given greater weight than those of doctors who do not treat a plaintiff. *See Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1995). The ALJ is required to articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison*, 759 F.3d at 1012. When, as here, the opinion being rejected is that of a treating physician, but is contradicted by another medical opinion, the ALJ is required to articulate "specific and legitimate" reasons supported by substantial evidence for discounting it. *Id*. Thus, an ALJ errs when she discounts a medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for h[er] conclusion." *Id*. (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Here, the ALJ's proffered grounds for affording little weight to Dr. Vazquez are not legitimate reasons supported by substantial evidence in the record.

With regards to the ALJ's first two reasons, the Ninth Circuit has held that "if the treating physician 'provided treatment for the claimant's psychiatric impairment,' then a treating physician's opinion on the mental state of his patient constitutes competent psychiatric evidence and may not be discredited on the ground that the physician is not a certified psychiatrist." *Lester*, 81 F.3d at 833 ("[T]he treating physician's opinion as to the combined impact of the claimant's limitations - both physical and mental - is entitled to special weight" even when the physician is a non-specialist); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). *But cf. Holohan v. Massanari*, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001) (affording little if any weight to a treating physician's opinion if the treating

physician "offers an opinion on a matter not related to her or his area of specialization, and presents no support for her or his opinion on the matter.")  Here, Plaintiff presented to Dr. Vazquez both for his physical symptoms of hypertension and for his anxiety.

In finding that Dr. Vazquez did not treat or prescribe Plaintiff medication, the ALJ relies on a form completed by Dr. Vazquez, apparently in support of Plaintiff's private disability benefits.  (A.R. 267.)  While the form indicates that Plaintiff has been under Dr. Vazquez's care and treatment for the medical problems of anxiety and depression, and notes his findings as "panic attacks, severe anxiety and depression," Dr. Vazquez wrote "N/A" under "Type of Treatment/Medication Rendered to Patient."  (A.R. 267.)  Notably, however, the record also contains another form in support of the same benefits application, wherein Dr. Vazquez certified that he was treating Plaintiff for depression, and that Plaintiff suffers from severe panic attacks, anxiety, and severe depression.  (A.R. 277, 280.)  Dr. Vazquez specifically certified that he had treated Plaintiff for those conditions on October 19, 2011, and on December 22, 2011.  (A.R. 277, 280.)  On the surface, Dr. Vazquez's response with respect to the type of treatment or medication rendered to Plaintiff may appear at odds with his certification that he was treating Plaintiff for depression.

Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (internal quotation marks and citation omitted).  Under a holistic consideration of the record, the Court finds that this apparent conflict is resolved by Dr. Vazquez's progress notes.  While the handwritten notes are not entirely legible, Dr. Vazquez's progress sheet dated December 22, 2011 references "anxiety/panic"

and "agoraphobia," and states "will need cognitive training behavioral modification." (A.R. 286.) The notes also reference a "stress test" under the "neuro" portion of the physical examination, (A.R. 292.) The notes also contain as the treatment "plan" for Plaintiff's diagnosis, "cont[inued] behavior modification" and "ref[erral] to counseling." (A.R. 289, 290, 291.) The notes further mention that Plaintiff is "getting psychotherapy," but "doesn't want [ ] meds, afraid of them." (A.R. 289, 290, 291.) Therefore, the seeming lack of treatment or any prescribed medication can be reconciled with Dr. Vazquez's statement that he continues to see and treat Plaintiff.[8] Indeed, it appears that though Dr. Vazquez's notes reference hypertension and other physical conditions, his primary treatment focus appears to be Plaintiff's psychological complaints. (A.R. 286-92; 446-47.) Accordingly, the ALJ's first two reasons are not legally sufficient to support the ALJ's failure to give controlling weight to Dr. Vazquez as Plaintiff's treating physician.

The ALJ's third reason that Plaintiff "was not even noted to display significant distress or anxiety at any of the visits with Dr. Vazquez" is also not a legitimate reason under the relevant legal standard.[9] As an initial matter, Dr. Vazquez's notes do indicate that Plaintiff "feels scared all the time," and though he may never have been hospitalized, he "had [an] anxiety attack went to urgent care." (A.R. 290, 291.) Moreover, there is nothing to suggest, beyond the ALJ's own expectation, that a treating physician must witness his patient's anxiety attack first-hand before rendering a diagnosis of anxiety. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical

---

[8] To the extent that a conflict or ambiguity still remains, it is the ALJ's responsibility to resolve conflicts or clarify ambiguities when the "when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

[9] To the extent that the ALJ doubts the sincerity of Plaintiff's complaints, the ALJ may not "improperly single[ ] out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [Plaintiff]." *Garrison*, 759 F.3d at 1018. As in *Garrison*, here, the record reveals consistent episodes of panic attacks and anxiety, with diagnoses that have remained constant over time and amongst varying physicians and treatment providers.

assessment beyond that demonstrated by the record). In fact, ALJs are expressly cautioned from inferring that an absence of symptoms at a specific point in time indicates an ability to work, especially "when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Garrison*, 759 F.3d at 1017-18. Accordingly, this is not a legitimate reason for discrediting Dr. Vazquez's opinion.

In her fourth reason, the ALJ plucks a statement from the report prepared by examining physician Dr. Romulado Rodriguez—whose assessment she later discredits—wherein he states under "History of Present Illness" that Plaintiff "denies depression." (A.R. 366.) It is well-established that ALJs are "not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits," particularly in the context of mental health. *Garrison,* 759 F.3d at 1018. In light of the overwhelming evidence from every other treating and examining source, that Plaintiff suffers from psychological impairments including anxiety, agoraphobia, and PTSD, the statement that Plaintiff "denies depression," does not constitute substantial evidence necessary to denounce Dr. Vazquez's opinion as a treating physician.

The ALJ's fifth reason for discrediting "the opinion of Dr. Vazquez [because it] is based entirely on subjective reports" by Plaintiff, is also not a legitimate reason as required under the prevailing standard. (A.R. 26-27.) An ALJ "is required to consider subjective symptom testimony" regarding mental health. *Brown v. Apfel*, 1999 U.S. App. LEXIS 2885, **4-5 (9th Cir. Feb. 19, 1999) (citing 20 C.F.R. §§ 404.1529, 416.929 (1997)). Federal courts have remanded cases where ALJs have found that mental health care providers' conclusions were based heavily on a plaintiff's subjective complaints, after finding that symptoms of depression and

anxiety are typically expressed through subjective complaints. *Hall v. Astrue*, 882 F. Supp. 2d 732 (D. Del. 2012). *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (holding, in an analogous case involving subjective complaints of pain, that an ALJ was bound to consider "all of the available evidence" because "pain is subjective and not susceptible to measurement by reliable techniques.") Moreover, Dr. Vazquez's assessment is supported by objective data, specifically, the results of tests administered by Dr. Kohut (which will be discussed in greater detail below). (*See e.g.* A.R. 460-69.) Accordingly, the ALJ has not provided specific and legitimate reasons supported by substantial evidence for deciding not to afford controlling or special weight to Dr. Vazquez's opinions.

### 3. <u>The ALJ failed to give specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. John J. Kohut, M.D.</u>

The ALJ discounted the opinion of psychiatrist Dr. John J. Kohut, M.D., who opined in a January 3, 2013 letter that Plaintiff was incapable of employment at the present time. (A.R. 27.) The ALJ's reasons for ascribing little weight to Dr. Kohut's opinions were that (1) Dr. Kohut was not a treating physician and had only seen Plaintiff once on September 29, 2011 for an evaluation, (2) his findings from the evaluation were not in the record, and (3) his opinion was brief, conclusory and unsubstantiated by objective medical evidence bolstered by the record. (A.R. 27.)

When as here, an examining physician's opinion is contradicted by another doctor, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). The ALJ's reasons for rejecting Dr. Kohut's opinions do not satisfy this standard. .

1    With respect to the ALJ's first reason, there is no dispute that "[t]he opinions
2    of treating doctors should be given more weight than the opinions of doctors who do
3    not treat the claimant." *Lingenfelter*, 504 F.3d at 1038.   However, in this case, the
4    opinion of Dr. Kohut appears to be entirely consistent with those of Dr. Vazquez
5    and Ms. Boyd who are Plaintiff's primary treatment providers.   With respect to the
6    second and third reasons, the record seems to contradict the ALJ's observation that
7    Dr. Kohut's findings for his evaluation are not in the record and that his opinion was
8    unsubstantiated by objective evidence.   It may be that Dr. Kohut's supporting
9    materials are less extensive than those of Plaintiff's treatment providers.   However,
10   Dr. Kohut's records include several mental health evaluations dated September 29,
11   2011, (the Minnesota Multiphasic Personality Inventory, Beck Inventory, Social
12   Phobia Inventory, Bourne Anxiety Inventory, The Mood Disorder Questionnaire,
13   and Yale-Brown Obsessive Compulsive Severity Ratings)[10] which indicate—at the
14   very least—severe anxiety.  (A.R. 464; 460-69.)

15

16   Moreover, Dr. Kohut's  notes allude to the same medical history that was
17   contained in Ms. Boyd's treatment notes, and conclude with "panic disorder with
18   agoraphobia," and an observation that Plaintiff prefers not to take psychotropic
19   medication "due to fear of SE," or side effects.  (A.R. 458-59.)   Accordingly, the
20   ALJ's reasons for discounting Dr. Kohut's opinion are not supported by substantial
21   evidence.

22   //
23   //
24   //
25   //
26   //
27
28

---

[10] Although an ALJ may discount an opinion based on tests within the claimant's control and subject to manipulation, here, the ALJ makes no mention of the tests administered by Dr. Kohut, much less discounts them. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).

**4. <u>The ALJ did not give specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. Anthony G. Bassanelli, M.D.</u>**

The ALJ gave little weight to the opinion of psychiatrist, Dr. Anthony G. Bassanelli, M.D., who examined Plaintiff on June 15, 2012 for a psychiatric IME, because (1) Dr. Bassanelli relied heavily on Plaintiff's subjective report of symptoms, (2) Dr. Bassanelli saw the Plaintiff only once, (3) Dr. Bassanelli's opinion was in sharp contrast to his own reports of Plaintiff's mental status examination. (A.R. 27-28.)

In a letter dated June 18, 2012, Dr. Bassanelli assessed that Plaintiff "is currently disabled due to Panic Disorder with Agoraphobia," and has a Global Assessment of Functioning ("GAF") score of 39.[11]   (A.R. 443-44.)  When as here, an examining physician's opinion is contradicted by another doctor, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record."  *Hill*, 698 F.3d at 1159.  The ALJ's reasons for rejecting Dr. Bassanelli's opinions do not satisfy the Ninth Circuit's standard outlined in *Hill*.

First, while Dr. Bassanelli admittedly relied on Plaintiff's subjective report of symptoms, his assessment and opinion was also based on: (1) Plaintiff's medical history; (2) Ms. Boyd's treatment notes; (3) Plaintiff's scores on the tests administered by Dr. Kohut; and (4) evidence of Plaintiff's failure to function at his

---

[11] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison*, 759 F.3d at 1003 (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).).  According to the DSM-IV, a GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

previous job despite accommodations.   Given these additional grounds for Dr. Bassanelli's assessment, the ALJ's first reason is not supported by substantial evidence.   Moreover, as previously discussed, "psychiatrists typically treat symptoms that are subjective and must rely on a patient's subjective descriptions to evaluate and diagnose the patient." *Scovel v. Colvin,* 2015 U.S. Dist. LEXIS 170835, **18-19 (E.D. Wash. Dec. 22, 2015).

The ALJ's second reason is undermined by the fact that Dr. Bassanelli's assessment is congruent with those of Plaintiff's treatment providers who saw him regularly.   Therefore, Dr. Bassanelli's brief relationship with Plaintiff as a consultative examiner is not a legitimate reason to discount his assessment.

Contrary to the ALJ's third stated reason, Dr. Bassanelli's assessment is not in conflict with his notes.   Plaintiff passed the Montreal Cognitive Assessment ("MOCA") administered by Dr. Bassanelli, who also observed that Plaintiff generally presented well during his examination and demonstrated very good abilities.   (A.R. 442.)   It may be true that Dr. Bassanelli did not discuss the test result or his observations during Plaintiff's mental status exam in his "assessment." However, in the mental status exam, Dr. Bassanelli notes that Plaintiff "described ongoing problems with fearfulness, fear of dying, fear of medications and irrational thoughts."   (A.R. 443 internal quotation marks omitted).   This clearly supports Dr. Bassanelli's assessment that Plaintiff suffers from panic disorder with agoraphobia.

The assessment is further supported by Plaintiff's physical symptoms (shortness of breath etc.), sphere of functioning, test scores, as well as other indicia. While the bulk of Dr. Bassanelli's observations as to Plaintiff's mental status exam concern such things as Plaintiff's memory, communication skills and comprehension, they certainly do not undermine a finding of panic disorder or

agoraphobia.   While there may be symptoms in common for multiple mental illnesses, the fact that Plaintiff denied hallucinations, paranoia, and obsessive-compulsive symptoms also does not undermine a finding that he suffers from panic disorder with agoraphobia.  (A.R. 442.)  *See, e.g., Hill*, 698 F.3d at 1161 (holding it was error to conflate "anxiety" and "panic disorder"); *Ramirez v. Shalala*, 8 F.3d 1449, 1454-55 (9th Cir. 1993) (recognizing there is no bright line distinction between mental illnesses and, due to common symptoms, many mental illnesses are not mutually exclusive).

## 5. **The ALJ's reasons for discounting the opinion of Dr. Romualdo Rodriguez M.D. are specific and legitimate reasons supported by substantial evidence**

The ALJ gave "little weight to the opinion of Dr. [Romualdo] Rodriguez," M.D. who examined Plaintiff on March 20, 2012 and essentially assessed no severe mental impairments.   When as here, an examining physician's opinion is contradicted by another doctor, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record."   *Hill*, 698 F.3d at 1159.   The ALJ's reasons for rejecting Dr. Rodriguez's opinion appears to satisfy the Ninth Circuit's standard outlined in *Hill*.

The ALJ found Dr. Rodriguez's opinion inconsistent with a treating source opinion and with evidence in the record showing that Plaintiff suffers from anxiety, agoraphobia and PTSD—all severe mental impairments, and also determined that Dr. Rodriquez's opinion was not supported by the longitudinal mental treatment records, including Plaintiff's frequent therapy treatments.  (A.R. 28-29.) Given the overwhelming record evidence from every other source—medical and other—that

contradicts Dr. Rodriguez's opinion, the ALJ's reasons for discrediting his opinion were specific, legitimate, and supported by substantial evidence.

### 6. The ALJ failed to consider the opinion of Dr. Kathy Vandeburgh, Ph.D.

On December 9, 2011, state psychologist, Kathy Vandeburgh, Ph.D. examined Plaintiff and assessed that Plaintiff suffered from panic disorder with agoraphobia and specific phobia, assessing a GAF score of 48 to 51[12] but opining that he could return to work within three months' time. (A.R. 26.) Although Plaintiff argues that the ALJ improperly afforded greatest weight to Dr. Vandenburgh's opinion, it appears that the ALJ merely summarized Dr. Vandenburgh's findings and assessment but did not ascribe any weight to them. (A.R. 26.) While the ALJ may have been implicitly influenced by Dr. Vandenburgh's opinion, without any weight ascribed to Dr. Vandenburgh's opinion in this record, the Court cannot be sure that the ALJ has properly considered all of the medical opinions in the claimant's case file. 20 C.F.R. §§ 404.1527(b), (c).

### 7. The ALJ also failed to consider the opinion of treating physician, Dr. Maryam Dehyar, M.D.

The ALJ neither discusses nor assigns weight to the assessment of family practitioner Dr. Maryam Dehyar who treated Plaintiff in August 2012. From the record, it appears that Plaintiff presented to Dr. Dehyar on August 20, 2012 complaining of anxiety. (A.R. 479.) Dr. Dehyar assessed generalized anxiety disorder, and physiological conditions: hypertension, and pterygium.[13] (A.R. 480.)

---

[12] A GAF score of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

[13] At a follow up on August 27, 2012, it seems Plaintiff was seen by Dr. Dehyar's colleague who noted that Plaintiff has "very high triglyceride" but said nothing of his mental health. (A.R. 506.)

Additionally, Dr. Dehyar's records reflect that Plaintiff was taking and refilling prescriptions for anti-anxiety medication.  (A.R. 492.)  To the extent this data conflicts with record evidence (including statements by Plaintiff, Ms. Boyd and other service providers) that Plaintiff does not take medication, either for fear of choking or for fear of side effects, and because the ALJ has an obligation to properly consider all of the medical opinions in the claimant's case file, the case is remanded for consideration of Dr. Dehyar's assessment and records and resolution of any conflicts or ambiguities therein.  20 C.F.R. §§ 404.1527(b), (c).

## 8. Credit as True Rule

If the ALJ were to accord controlling or special weight to the opinion of Dr. Vazquez (and refrain from discrediting the assessments of Ms. Boyd, Dr. Kohut, and Dr. Bassanelli) and others, pursuant to the credit as true test, Plaintiff argues that a reversal and order of benefits is warranted.  (Joint Stip. at 23.)  *Garrison*, 759 F.3d at 1021; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014) ("Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." (internal quotation marks, citations, brackets, and ellipsis omitted)).  However, in this case, there are conflicts and ambiguities which do not permit this Court to conclusively find Plaintiff disabled. Accordingly, the case is remanded. *Garrison*, 759 F.3d at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1140-42 (9th Cir. 2014) (Courts must "remand for further proceedings when…an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.")

//

//

//

21

1

## CONCLUSION

2

3       For the reasons stated above, IT IS ORDERED that the decision of the

4   Commissioner is REMANDED for reconsideration of the weight accorded to the

5   various medical evidence in Plaintiff's file, including the source opinions of treating

6   and non-treating providers.

7

8       IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

9   this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and

10  for defendant.

11

12      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

13

14  DATED: January 22, 2016

15

16  _____

17                 KAREN L. STEVENSON
                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28